AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. 2.22.MJ.333
INFORMATION ASSOCIATED WITH )
Rathnakishore@nbdeideticcapital.com )
THAT IS STORED AT PREMISES CONTROLLED BY )
MICROSOFT CORPORATION, USA )

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the _____Western_____ District of _____Washington_____
*(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property
described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

**YOU ARE COMMANDED** to execute this warrant on or before _____May 27, 2022_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the
person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the
property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory
as required by law and promptly return this warrant and inventory to ___Any USMJ SD OH -___
Clerk's Office *United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose
property, will be searched or seized *(check the appropriate box)*
☐ for ____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: May 13, 2022     At 1:29 P.M.

_____
Elizabeth A. Preston Deavers
United States Magistrate Judge

City and state:     Columbus, Ohio                                    e Judge

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date:

_____
*Executing officer's signature*

_____
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH USER:<br><br>Rathnakishore@nbdeideticcapital.com<br><br>THE "TARGET ACCOUNT" THAT IS STORED AT PREMISES CONTROLLED BY MICROSOFT CORPORATION, USA | Case No. 2.22. MJ.333<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Anthony DeCicco, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.       I make this affidavit in support of an application for a search warrant for information associated with the TARGET ACCOUNT that is stored at premises controlled by Microsoft Corporation, USA, ("Microsoft") a technology company that specializes in internet-related services and products, headquartered at 1 Microsoft Way, Redmond, WA 98052, to disclose certain records and other information pertaining to the TARGET ACCOUNT as described in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Microsoft to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since October 2019. I am currently assigned to the Cincinnati Field Office, Columbus Resident Agency, Cyber Crime Squad, which is responsible for investigating computer and high-technology crimes. During my career as an FBI SA, I have participated in numerous cyber-related investigations. During the investigation of these cases, I have participated in the execution of numerous arrests, search warrants, and seizures of evidence. Since my assignment to the Cyber Crime Squad, I have received both formal and informal training from the FBI regarding cyber investigations. I am trained and authorized to investigate the offenses alleged herein. Prior to working with the FBI, I received a Master of Science in Computer Information Systems and cyber security from Boston University. I have also completed the SANS Institute GIAC Security Essentials and GIAC Certified Incident Handler courses.

3.      The facts in this affidavit come from my personal observations, training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of Title 18, United States Code, Sections 371 (conspiracy), 1343 (wire fraud), 1344 (bank fraud), 1956 (money laundering), and 1957 (money laundering), among other offenses, have been committed by Rathnakishore Giri ("GIRI") and others, and to search the information described in Attachment A for evidence, fruits, contraband, and instrumentalities of violations of these crimes further described in Attachment B.

## JURISDICTION

5.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6.     The FBI is investigating a cryptocurrency investment fraud scheme carried out by GIRI and it is believed that GIRI used the TARGET ACCOUNT in connection with this scheme. The investigation has revealed through documents and witnesses that beginning in at least 2019, and continuing through at least late 2021, GIRI solicited investments from individuals under the pretense that he would invest their money in cryptocurrency.  Most of the investors were promised their principal investment amount plus a specified return amount (usually between five and 15 percent) that would be repaid by GIRI within a specific period (*e.g.*, 60 days, 90 days).  Typically, these investors made an initial investment to GIRI via bank wire into bank accounts associated with GIRI and/or transfers into cryptocurrency accounts associated with GIRI.  The investigation has identified various initial investment amounts, typically ranging from $2,000 to over $300,000 per investment.  Some investors were given written promissory notes from GIRI, some of which were executed in the name of one of GIRI's two companies: SR Private Equity LLC and NBD Eidetic Capital LLC.

7.     Based on my review of documents and witness interviews, I know that despite the investment terms that GIRI represented at the time of the initial investments, many investors have not received any type of repayment from GIRI despite the investment period lapsing.  Specifically, many investors are still waiting to receive their initial principal investment amount or any promised

3

interest. Although others have been repaid in part, many have not received the full amounts promised by GIRI at the time of their investment, nor additional returns that GIRI claimed had accrued on their initial investment. Moreover, the investigation has identified several instances where new investor funds appear to have been used to repay older investors and never transferred to any cryptocurrency platform for investment.

8.      Based on documents and witness interviews obtained during the investigation, it is believed that over 30 investors have directed funds to GIRI for the purpose of investing those funds into cryptocurrency. The investigation has identified individuals who invested with GIRI as early as 2019, through as recent as September 2021. Witnesses have also indicated that GIRI has continued seeking additional investors through at least late 2021. Some of these investments remain outstanding through present.

9.      Numerous witnesses have provided information about GIRI's activities related to cryptocurrency trading platforms. For example, on or about December 14, 2021, FBI Special Agent Chelsea Wiese and I interviewed an investor ("INVESTOR 1"). In sum and substance, INVESTOR 1 stated that he had known GIRI since 2008. INVESTOR 1 said that in and around late 2020, he invested approximately $80,000 with GIRI under the terms that the amount would be invested in cryptocurrency and would be repaid (with interest) when requested by INVESTOR 1. According to INVESTOR 1, GIRI has not fulfilled the terms of their agreement and has not repaid the majority of the $80,000. According to INVESTOR 1, GIRI represented that he was engaged in day-trading cryptocurrencies and often used leveraged trading on the cryptocurrency trading platform, BitMex. INVESTOR 1 believes that GIRI did not separate investments by individual accounts on BitMex and instead pooled investment funds into one account. The investigation has revealed that leveraged trading on BitMex allows a user to conduct investments

4

two to 100 times the capital contained in the user's account, for a fee, through the use of futures contracts. During his interview, INVESTOR 1 added that he was in contact with or knew of more than 30 other investors who had also invested with GIRI, the majority of whom reported that they never received their promised dividends, returns, or initial investments.

10. The investigation has identified various bank accounts and cryptocurrency accounts used by GIRI to perpetuate this investment scheme. While some of these accounts are in GIRI's name, other accounts have been opened under the names of GIRI's relatives, business entities, and/or business associates. Specifically, the investigation has identified accounts opened in the name of GIRI's parents ███████████████████ which appear to have been used by GIRI to facilitate his fraud scheme. In addition, the investigation has identified at least one bank account in the name of one of GIRI's companies, NBD Eidetic Capital LLC, which was opened by one of GIRI's known businesses associates, ███████████.

11. As part of the investigation, the FBI has analyzed bank records provided by Park National Bank ("PNB"), Digital Federal Credit Union ("DCU"), and JPMorgan Chase Bank ("JPMC") related to the following eight bank accounts:

| Account Name | Financial Institution | Account Number | Account Signatory |
|---|---|---|---|
| SR PRIVATE EQUITY LLC | PNB | X4415 | RATHNAKISHORE GIRI |
| ███████████ | PNB | X2282 | ███████████ |
| RATHNAKISHORE GIRI | PNB | X2075 | RATHNAKISHORE GIRI ███████████ |

| NBD EIDETIC CAPITAL LLC[1] | PNB | X0089 | █████████ |
| NBD EIDETIC CAPITAL LLC | PNB | X0095 | █████████ |
| ██████████ | DCU | X0503 | █████████ |
| RATHNAKISHORE GIRI ████ ████████ | JPMC | X2733 | RATHNAKISHORE GIRI ████████ |
| ██████████ | JPMC | X1701 | █████████ |

12.     As noted above, the investigation has revealed that in some instances, investment money wired into GIRI's bank accounts was never invested into cryptocurrency or otherwise used for the purpose represented by GIRI. Instead, such funds were used to repay other suspected investors and/or transferred into other accounts associated with GIRI. Four examples of such instances are summarized below.

### May 28, 2021

13.     On or about May 28, 2021, PNB account X4415 received an incoming wire for $300,000, which originated from an account in the name of  That same day, on or about May 28, 2021, $300,000 was transferred from PNB account X4415 to PNB account X0095. Prior to this transfer, the PNB account X0095 had a balance of $115,200. Later that same day, PNB account X0095 was debited for a total of $398,950 in 31 transactions to the following individuals:

    i.   ($25,000)              PALM DRIVE COURT LLC

---

[1] Certain bank records for Accounts X0089 and X0095 refer to the Account Name as "NBD Eidetic *Captial* LLC."



    ii.  ($2,000)
   iii.  ($16,000)
   iv.  ($10,000)
    v.  ($10,000)
   vi.  ($2,000)
  vii.  ($2,000)
 viii.  ($20,000)
   ix.  ($80,000)
    x.  ($10,000)
   xi.  ($2,000)
  xii.  ($10,000)
 xiii.  ($10,350)
 xiv.  ($4,000)
  xv.  ($20,000)
 xvi.  ($13,200)
 xvii.  ($10,000)
xviii.  ($2,000)
 xix.  ($2,200)
  xx.  ($2,200)
 xxi.  ($10,000)
 xxii.  ($2,000)
xxiii.  ($4,000)
xxiv.  ($8,000)
 xxv.  ($4,000)
xxvi.  ($4,000)
xxvii.  ($20,000)
xxviii.  ($32,000)
xxix.  ($40,000)
 xxx.  ($8,000)
xxxi.  ($14,000)

14.    Based on witness interviews, some of the individuals repaid were GIRI's investors who previously invested with GIRI, including ███████████████ and ███████ ████████████ Also repaid was A4M Brasil Inc., which filed a lawsuit against GIRI on or about December 13, 2021, in which A4M Brasil Inc. alleges that they invested $400,000 with GIRI and that GIRI made false representations regarding his ability to repay the invested amounts, which were made solely to fraudulently induce A4M Brasil Inc. to invest funds with GIRI.

15.    During an interview, ███████ told me and Special Agent Wiese in sum and substance that he sent the $300,000 wire to GIRI on May 28, 2021 to be invested in cryptocurrency.

7

Fischer did not authorize GIRI to use his funds for anything other than an investment in cryptocurrency. Although ▮▮▮ never spoke directly to GIRI and did not have a promissory note detailing the terms of the investment, the terms of the investment were communicated by GIRI to Fischer through another of GIRI's investors, ▮▮▮ ▮▮▮ understanding, as communicated by ▮▮▮ was that GIRI was only using ▮▮▮ investment for cryptocurrency. Moreover, ▮▮▮ was promised that his investment would generate a 10% return in three to six months. To date, ▮▮▮ received his initial investment amount ($300,000) from GIRI but has not received the corresponding 10% return ($30,000).

### August 13, 2021

16.     Similarly, on or about August 13, 2021, PNB account X4415 received an incoming wire for $1,500,000. The wire originated from an account in the name of ▮▮▮ ▮▮▮ and the wire memo stated, "REF LOAN 8/12/21." Prior to receipt of this wire, GIRI's PNB account X4415 had a balance of $85. Later that same day, on or about August 13, 2021, PNB account X4415 was debited for a total of $1,492,500 in six transactions to the following individuals or accounts:

     i.   ($10,000) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

    ii.   ($50,000)  RATHNAKISHORE GIRI – PNB X2075

   iii.  ($100,000)

   iv.  ($182,500)

    v.   ($200,000)

   vi.  ($950,000)

17.     $50,000 was then transferred from PNB account X2282 to DCU account X0503. That same day, on or about August 13, 2021, a wire of $50,000 was sent from DCU account X0503 to Coinbase account ▮▮▮▮▮▮.

18.     With respect to the purpose of the $1,500,000 wire that ▮▮▮ sent to GIRI on or about August 13, 2021, ▮▮▮ old me and Special Agent Wiese in sum and substance that GIRI

8

approached ████ because certain investors wanted to withdraw their positions from one of GIRI's investment funds, and GIRI offered ████ a high rate of return if ████ took over those investors' positions, which he agreed to do.

### September 13, 2021

19.     On or about September 13, 2021, PNB account X4415 received two incoming wires for $50,000 each, for a total of $100,000. Both wires originated from accounts in the name of ████████████ and the wire memo for one of the wires stated, "/PURP/INVESTMENT." Later that same day, $100,000 was transferred from PNB account X4415 to PNB account X2075. Prior to receipt of the $100,000 wire from PNB account X4415, PNB account X2075 had a balance of $1,786.56. Later that same day, PNB account X2075 sent an outgoing wire of $100,000 to an account in the name of ████████████

20.     The investigation has confirmed that ████████████████ was an investor who was repaid a portion of his investment on or about September 13, 2021. In a lawsuit filed against GIRI on December 30, 2021, ████ alleges that he, along with his daughter, ████████ ████ invested at least $400,000 with GIRI for the purpose of investing such funds into cryptocurrency. ████ also confirmed he received a partial repayment of his investment, specifically, $100,000, in September 2021.

### September 21, 2021

21.     Lastly, on or about September 21, 2021, PNB account X4415 received a wire of $280,000 from an account in the name of ████████████████████ Prior to receiving these funds, PNB account X4415 had a balance of $141.55. That same day, on or about September 21, 2021, $190,000 was transferred from PNB account X4415 to PNB account X2075. Prior to this transfer, PNB account X2075 had a balance of $460.89. Later that same day, on or about

9

September 21, 2021, PNB account X2075 was debited for $136,125.57 in three transactions to the following individuals or entities:

    i.   ($60,525.57)
   ii.   ($45,600)
  iii.   ($30,000)



The following day, on or about September 22, 2021, the following two wires were sent from PNB account X2075:

    i.   ($10,000)
   ii.   ($14,150)



22.    Special Agent Wiese and I interviewed ▮▮▮▮▮▮▮▮▮▮ the brother of ▮▮▮▮▮▮ In sum and substance, ▮▮▮▮▮▮ said that he met GIRI through ▮▮▮ and he and ▮▮▮▮▮▮ jointly invested with GIRI on multiple occasions. ▮▮▮▮▮▮ stated that his understanding was that the money sent to GIRI was only to be invested in cryptocurrency and the investment guaranteed a five percent rate of return.

23.    Moreover, a review of GIRI's bank accounts shows numerous preauthorization charges and payments occurring around the same time of these transactions that are consistent with a lavish lifestyle, including the following transactions that occurred in and around August 2021:

- $27,860 to The Nightfall Group, a VIP travel concierge and luxury rental service

---

[2] According to https://jatinagroup.com, Jatina Group LLC is a vacation rental agency that specializes in luxury mansion rentals and offers a 24/7 concierge.

[3] According to https://flyxo.com/about, XO Global LLC is part of a private aviation company that offers a variety of flight solutions, including fixed-price charter and customized private jet membership programs.

[4] According to https://www.yachtlife.com/about-us, Yachtlife Technologies Inc. is a mobile application that allows a user to charter a yacht from their mobile devices.

in Beverly Hills, California;

- $4,500 to the Highlight Room, an outdoor rooftop, lounge, pool and grill located at Dream Hollywood in Los Angeles, California;

- $755.65 to Gucci, an Italian luxury brand; and

- $3,616.08 to Turo Car Rental, a car sharing marketplace.

These expenses are consistent with statements made by witnesses who know that GIRI often flies using private jets and rents luxurious vacation homes.

24.     The investigation has also identified various Coinbase accounts under the names of GIRI or his parents.

| Coinbase User ID | User Name |
|---|---|
| ██████████ ("Coinbase Account #1") | Rathnakishore Giri |
| ██████████ ("Coinbase Account #2") | ██████████ |
| ██████████ ("Coinbase Account #3") | ██████████ |

25.     Records show that large sums of money were frequently transferred between bank accounts associated with GIRI and the Coinbase accounts listed above.  For example:

a.  Between January 2019 and January 2021, over $6 million was transferred from JPMC account X2733 to Coinbase Account #1.

b.  Between February 2021 and November 2021, over $5 million was transferred from PNB account X2282 to Coinbase Account #2.

11

     c. Between January 2019 and February 2021, over $1 million was transferred from JPMC account X1701 to Coinbase Account #2.

     d. Between March 2021 and October 2021, over $350,000 was transferred from DCU account X0503 to Coinbase Account #3.

26.    As outlined below, GIRI used the TARGET ACCOUNT to send and receive messages related to his investment scheme. Specifically, on or about December 21, 2021, Special Agent Wiese interviewed another investor ("INVESTOR 2"), who stated in sum and substance that between in or around December 2020 and in or around August 2021, s/he invested approximately $300,000 with GIRI under the terms that the amount would be invested in cryptocurrency and would be repaid (with interest) when requested by INVESTOR 2. Based on my review of documents obtained during the investigation, I learned that from at least in or around April 2021 through in or around August 2021, GIRI used the TARGET ACCOUNT to communicate with INVESTOR 2 about this investment. For example:

     a. On or about April 12, 2021, INVESTOR 2 sent an email to the TARGET ACCOUNT stating, "I wanted to follow-up on the conversation we had last week on how to return the proceeds. My understanding [is] that the original principal will be returned to my bank account next month. However, the dividends can be transferred to my Coinbase in bitcoins."

     b. On or about April 13, 2021, GIRI, using the TARGET ACCOUNT, replied, "Please send me your BTC wallet address from Coinbase and I will send you the dividends end of this week to that wallet. Should be Thursday or Friday once I liquidate positions in the fund."

12

c. On or about August 1, 2021, INVESTOR 2 sent an email to the TARGET ACCOUNT, stating, "I have tried to reach you by text and have left you 2 voice mails. I have not received a response to any of my messages. If there is a reason for not responding I would like to understand. However, I want to redeem all the funds that I have invested with you at the earliest…As we have discussed in the past I would like to get the principal back wired to my Citi Bank account and any growth in the assets to be transferred to my Coinbase Wallet. Last we spoke, I believe I have approx. 19.2 bitcoins."

27. Open-source research revealed the TARGET ACCOUNT to be hosted by ProofPoint Inc., an email security platform, and a subsequent review of ProofPoint Inc. records show that the TARGET ACCOUNT is hosted by Microsoft Office 365. A preservation request was submitted to Microsoft for the TARGET ACCOUNT on or about January 4, 2022, and a preservation extension was submitted on or about March 29, 2022.

\*      \*      \*

13

## CONCLUSION

28.     Based on the forgoing, I request that the Court issue the proposed search warrant.

29.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Microsoft. Because the warrant will be served on Microsoft who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

30.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

ANTHONY DECICCO
SPECIAL AGENT
FBI

Subscribed and sworn to before me on ____May 13,____ , 2022

Honorable Elizabeth A. Preston Deavers
UNITED STATES MAGISTRATE JUDGE

14

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with server/account Rathnakishore@nbdeideticcapital.com (the "TARGET ACCOUNT") that is stored at premises owned, maintained, controlled, or operated by Microsoft Corporation, USA, which is headquartered at 1 Microsoft Way, Redmond, WA 98052.

**ATTACHMENT B**

**Particular Things to be Seized**

I.     **Information to be disclosed by Microsoft Corporation, USA (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on or around January 4, 2022 and an extension request on or around March 29, 2022, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.     The contents of all communications associated with the account from January 2019 to present, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.     All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.     The types of service utilized;

d.     All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

2

e.    All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken; and

f.    All records and content pertaining to the servers/channels or users in contact with the individual using the account.

The Provider is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, or instrumentalities of violations of Title 18, United States Code, Sections 371 (conspiracy), 1343 (wire fraud), 1344 (bank fraud), 1956 (money laundering), and 1957 (money laundering) those violations involving Rathnakishore Giri and unknown subjects and occurring after January 1, 2019, , including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.  Communications discussing investments or investment strategies;

b.  Evidence related to the use or investment of any cryptocurrency, fiat currency, or other asset, including the use of any cryptocurrency trading platforms, including Bitmex or Coinbase;

c.  Evidence related to the management and activity of any investment funds, including records related to management, operations, and business activity including ledgers, transaction logs, and marketing/promotional material;

d.  Evidence of any communications with or about investors or potential investors;

e.  Evidence related to any bank accounts, credit or debit cards, PayPal accounts, Coinbase, or virtual currency accounts;

f.  Evidence related to any cryptocurrency wallets, public or private keys addresses, or digital wallet applications;

g.  Evidence indicating the identification of co-conspirators or other parties to the fraudulent scheme;

4

h.  Evidence of any transactions involving the purchase, acquisition, sale, lease, loan, or use of cryptocurrency, fiat currency, real asset, or other items evidencing the obtaining, secreting, transferring, concealment, and/or expenditure of funds;

i.  All records, files, documents, temporary and permanent electronic files and records that contain, attach, reference, the method used to intake investments;

j.  Evidence indicating how and when the Microsoft account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

k.  Evidence indicating the Microsoft account owner's state of mind as it relates to the crime under investigation;

l.  The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, contraband and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

5